STATE ex rel. I. J. HINES, Respondent, H. J. RANDLES, et al., Appellants. .

Springfield Court of Appeals, January 29, 1923.

1. **FERRIES: Failure to Keep Boat in Good Repair, Held Breach of Ferryman's Bond.** The bond required of ferrymen by Revised Statutes 1919 section 5536, is given for the faithful performance of the duties required by law, and where a team of mules backed off the ferry into water ten feet deep and were drowned, because there was no end guard or gate, the ferryman breached his bond in failing to keep a good boat in good repair and suitable to the water, as required by section 5540.

2. ————: **Bond for Protection of Public.** A ferryman's bond is for protection of the public, as well as for the security of penalties provided by Revised Statute 1919, sections 5541, 5548, against the ferryman for its breach.

Appeal from Circuit Court of Butler County.—*Hon. Almon Ing,* Judge.

AFFIRMED.

*Henson & Woody* and *Herbert H. Freer* for appellant.

(1) The liability of a surety must be found within the strict letter of the bond. He cannot be held beyond the strict letter of his contract, and his liability will not be extended by implication. The bond sued on was not given for the benefit of plaintiff, and the demurrer of the sureties should have been sustained. Lumber Co. v. Trust Co., 136 Mo. App. 44; Singer Mfg. Co. v. Hibbs, 21 Mo. App. 674; Lighting Co. v. Hobart, 98 Mo. App. 227; Pemiscot Trust Co. v. Tindall, 272 Mo. 681; Raleigh Med. Co. v. Modde,—Mo. App.—, 209 S. W. 958; Bobb v. Theater Co.,—Mo. App.—, 221 S. W 372; Builders' Supply Co. v. Evans Const. Co., 204 Mo. App. 76; R. S. 1919, sec. 5536; 5541; 5546. (2) There can be no

liability on a bond if the conditions thereof have been complied with. The proof, uncontradicted, shows that defendant, Randles, had a good boat, that it was in good repair, that it was suitable to the waters of Black River and that he had sufficient men to handle it. This being true, there was not breach of the conditions of the bond. R. S. 1919, secs. 5536, 5540. (3) A plaintiff may not sue on one cause of action and recover on another and different cause. Nave v. Dieckman,—Mo. App.—, 208 S. W. 273; Henry County v. Bank, 208 Mo. 209; Carson v. Cummings, 69 Mo. 325; Chitty v. Railroad, 148 Mo. 64, 74-75; Waldheir v. Railroad, 71 Mo. 514. (4) Upon the record in this case, defendant, Randles, was a gratuitous bailee and was liable for gross negligence only. Cohen v. Railroad, 59 Mo. App. 66, 68; Wiser v. Chesley, 53 Mo. 547; Mason v. Union Stock Yards Co., 60 Mo. App. 93; King v. Bank, 106 Mo. App. 1; Stevens v. Stevens, 132 Mo. App. 624, 627; Camden v. Ferry Co., 36 Am. Rep. 501. (5) Where, as here, the owner of property keeps it under his own control while on a ferry, the liability of the ferryman is not that of a carrier, but he is answerable for actual negligence only. Chevallier v. Strahan, 47 Am. Dec., note page 654; White v. Winnissmmet Co., 7 Cush. 155; Wyckof v. Ferry Co., 52 N. Y. 32; Dudley v. Ferry Co., 36 Am. Rep. 501; Harvey v. Rose, 26 Ark. 3. (6) The liability of an accommodation surety is not the same as that of one for hire, therefore, the court erred in refusing to permit the defendant, sureties, to show that they received no compensation for signing the bond sued on. Lackland v. Surety Co., 256 Mo. 133, 140; State ex rel. Matter v. Surety Co., 187 Mo. App. 39, 49; Roark v. Surety Co., 130 Mo. App. 401; Long v. Guaranty Co., 130 Mo. App. 421; State ex rel. v. Cochrane, 264 Mo. 581; 12 A. L. R. 382, 383; Barton v. Surety Co., 192 Mo. App. 561.

*Sam M. Phillips* for respondent.

(1)  While it is true that the sureties' liability is to be determined by the bond, still the law of the place where the contract is entered into at the time of the making of it, is as much a part of the contract as though it were expressed or referred to therein. 13 Corpus Juris, 560; Kavanaugh v. Supreme Council, 158 Mo. App. 234, 138 S. W. 359; Kessler v. Glayes, 147 Mo. App. 88, 125 S W. 799; Parks v. Fire Ins. Co., 26 Mo. App. 511.  (2)  One who is accepted for transportation, as a passenger without any compensation to be rendered, is nevertheless entitled to the same degree of care, skill and diligence for his safety and protection as the carrier owes to paying passengers. 10 Corpus Juris, 873, and cases cited in note 82; Lemon v. Chanselor, 68 Mo. 340-352; Dorsey v. Railroad, 83 Mo. App. 528; Buck v. Peoples, etc., Railroad, 46 Mo. App. 555.

BRADLEY, J.—This is a suit upon the bond of a ferryman for damages for the loss of two mules that backed off the ferry boat and were drowned. The cause was tried before the court and a jury. Plaintiff recovered and defendant sureties appealed.

Plaintiff alleged that between September 26th and December 26, 1921, defendant Randles was duly authorized and licensed to, and did keep, operate, manage and control a ferry boat plying back and forth across Black River at Poplar Bluff; that to secure the faithful performance of his duties as such ferryman and as required by law defendant Randles as principal and defendants J. J. Young, M. Martin and Will Calaway as sureties executed to the State of Missouri a ferryman's bond in the penal sum of $500, which bond is set out in full in the petition. Plaintiff further alleged that defendant Randles was guilty of a breach of said bond, and that Randles and the sureties were liable to plaintiff for said breach; that defendant Randles negligently and carelessly used and operated the ferryboat without any guards at the ends of said boat to prevent horses, mules or other animals that might become frightened while on

said boat from backing or running therefrom into the river. Plaintiff further alleges that on the —— day of October, 1921, he drove his team of mules, hitched to a wagon, upon said boat for the purpose of being transported across the river, and that after he had paid his fare for himself, team and wagon, and while the boat was being propelled across the river his mules without fault on his part suddenly began backing, and on account of the fact that defendant Randles had negligently failed and neglected to keep guard rails or gates at the ends of said boat, said mules backed from said boat while hitched to the wagon and were drowned. Defendants answered by a general denial, and a plea of contributory negligence wherein it is alleged that plaintiff's loss was occasioned by his own negligence in failing and neglecting to unhitch his mules from the wagon after being directed so to do, and because of his own negligence in backing the mules off after they became frightened. No reply was filed so far as appears, but no mention is made of this omission.

The evidence showed that there was no guardrail, gate or other thing at the end of this boat to prevent plaintiff's mules from backing off. The boat was thirty-five feet long and twelve feet wide, substantially built, and had guardrails at the sides, and when defendant first began operating he had guards for the ends. The last end guardrail had, however, been lost in the river the night before plaintiff's mules were drowned. At either end of the boat there was an apron which was raised and lowered by a lever. These aprons served as a kind of gangway upon which teams, wagons, etc., entered and left the boat. These aprons where attached to the boat were fifteen inches above the floor of the boat and in addition to serving as a gangway they served to some extent to prevent a team from backing a wagon off. The boat was taken across the river by pulling upon a cable stretched across the river, and upon which cable ran pulleys connected with the boat. Plaintiff had no bed or wagon box on his wagon and drove on the boat

sitting on the hounds. A piece of plank or piece of a railroad tie, plaintiff's witnesses say it was a piece about 2 x 12 and about eighteen inches long, was placed under one of the rear wheels of plaintiff's wagon to act as a scotch. The river was seventy-five or eighty feet wide at the place, and when the boat had gone twenty or twenty-five feet on the way across the mules became frightened at the creaking of the pulleys on the cable and backed off the boat and were drowned.

Defendant Randles did not appeal, and the cause is here on the appeal of the sureties on Randles' bond. Defendant sureties assign error as follows: (1) In refusing their instruction in the nature of a demurrer at the close of the case; (2) in excluding evidence, and (3) in the instruction given for plaintiff.

Defendant sureties contend that plaintiff is not within that class of persons who may sue upon the bond. Defendant sureties say in their brief: "This is a penal bond, and, from the whole context of the law with reference to ferries, it is perfectly apparent that it is not for the benefit of plaintiff. In order to enable plaintiff to sue on this bond, he nor the class to which he belongs, not being named therein, it must clearly appear, by the terms of the bond, that he is of the class covered by the condition of the bond." The bond sued on, signatures omitted, is as follows: "FERRYMAN'S BOND. Know all men by these presents: That we, H. J. Randles as principal, and J. J. Young, M. Martin and Will Calaway as sureties, are held and firmly bound unto the State of Missouri, in the sum of Five hundred dollars for the payment of which we bind ourselves and our heirs, executors, and administrators firmly by these presents.

"The condition of the above bond is such, however, that whereas the said Harve J. Randles has been authorized and licensed by the county court of Butler county to keep a ferry across Black River at Poplar Bluff, from September 26th to December 25th, for a

27—211 M. A.

period of three months from this date. Now, therefore, if the said H. J. Randles shall faithfully perform the duties required by law at such ferry, then this obligation to be void; otherwise to remain in full force and effect. Dated at Poplar Bluff, this 26th day of September, 1921.''

Section 5540, Revised Statutes 1919, provides that every ferryman shall keep at his ferry ''a good boat or boats, in good repair, suitable to the water, and sufficient hands to attend on all occasions.'' Section 5541, Revised Statutes 1919, provides that ''every ferryman failing to give due attention shall, for every offense, forfeit five dollars, and for failure to keep such boat in good repair, shall forfeit thirty dollars to the county where the ferry is situated; and he shall be liable for all damages that any person may sustain thereby, to be recovered by civil action in any court having jurisdiction.'' Section 5548, Revised Statutes 1919, provides that ''upon the failure of the ferryman to perform any duty herein required the attorney general or prosecuting attorney for the county shall commence and prosecute an action on the bond given by the ferryman, and the recovery of any penalty shall be no bar to any action on such bond.'' There is no question about the *ferryman* being liable for negligence generally, but the question here is: Can suit be maintained on a ferryman's bond for the negligence of the principal in conducting the business of a ferryman?

The bond required by our statute and given under it was for the faithful performance of the duties required by law, Section 5540 requires that the ferryman shall keep a good boat, in good repair and suitable to the water. The defendant had a good boat when he commenced, but did he continue to keep a good boat, in good repair, and suitable to the water? The river was about ten feet deep, and plaintiff's mules backed off and were drowned because there was no end guard or gate and because of the depth of the river. Under these facts we think that the ferryman breached his bond in failing to

keep a good boat, in good repair and suitable to the water. A ferryman's bond is for the protection of the public as well as for the security of penalties against the ferryman for its breach. Plaintiff submitted in his instruction the grounds of negligence set up in his petition, and we are of the opinion that such allegations, if found to be true, constituted a breach of the bond within the purview of the statute. The instruction in the nature of a demurrer was, therefore, properly refused.

The disposition of the first assignment disposes of the only substantial question here. The evidence excluded was an offering that the sureties were accommodations sureties and were therefore entitled to a strict construction of the bond. We do not think that this exclusion is of consequence. Plaintiff's instruction was bottomed upon his petition and the evidence and was as favorable to defendants as the law, as we have construed it, justifies.

The judgment should be affirmed and it is so ordered. *Cox, P. J.,* and *Farrington, J.,* concur.